## No. 11,453.

### MILLER *v.* COLORADO DISCOUNT CORPORATION.

Decided December 20, 1926.

Action for damages for breach of contract. Judgment of dismissal.

### *Reversed.*

1. TRIAL—*Proof—Offer.* A party is not required to make a formal offer of proof, where the court has announced that such proof would be rejected.

2. APPEAL AND ERROR—*Evidence.* On the issue of want of consideration for a contract, it was error for the court to reject evidence to the effect that waiver of plaintiff's right to bring suit for fraud, was consideration for the contract, the evidence being rejected because no fraud had been pleaded.

3. ACTIONS—*Fraud and Deceit.* In an action for breach of contract, it is held, under the facts disclosed, that the court's theory that plaintiff was confined solely to an action for fraud and deceit was erroneous.

4. APPEAL AND ERROR—*Trial—Conflicting Evidence.* The evidence being in conflict on a material issue, the case should be submitted to the jury.

5. EVIDENCE—*Conclusion.* In an action on contract, the statement of a witness that no dividend had been earned on corporate stock was a mere conclusion and without effect, where the evidence disclosed that a dividend had been declared, and credited to plaintiff on the corporate books.

*Error to the District Court of the City and County of Denver, Hon. Henley A. Calvert, Judge.*

Mr. REES D. REES, Mr. C. E. WAMPLER, for plaintiff in error.

Mr. F. T. JOHNSON, Mr. S. H. JOHNSON, for defendant in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

PLAINTIFF in error brought suit against defendant in error to recover damages for alleged breach of contract. At the conclusion of plaintiff's testimony the court sustained defendant's motion for nonsuit and dismissed the case. Plaintiff brings the case here for review.

The assignments are that the court erred in sustaining the motion for nonsuit, and in excluding certain testimony offered by plaintiff to establish the consideration for the contract set out in the complaint. The complaint contains two causes of action.

Briefly, and as far as necessary to be stated, the complaint alleges for a first cause of action: That on and for several months prior to October 1, 1923, the plaintiff was the owner of 400 shares of the preferred stock of the defendant, for which she paid $4,000, and 400 shares of the common stock of defendant company, for which she paid nothing; that for several months subsequent to October 1, 1923, the defendant was offering for sale, and selling, shares of its preferred and common stock to individual purchasers at the price of $10 to $12.50 per share for the preferred stock; that the shares so sold and delivered to individual parties exceeded 400; that on or about the first day of October, 1923, plaintiff and defendant entered into a contract for a good and valuable consideration, by the terms of which it was agreed that the defendant, as rapidly as it made sales of its stock would, instead of delivering to the purchasers the then unissued preferred and common stock of defendant, deliver the shares of such stock owned by the plaintiff, and would continue to do so until all of plaintiff's stock had been disposed of, and that upon the making of such sales and delivery of

the stock of plaintiff, the defendant would pay to plaintiff the sum of $10 per share for the preferred stock of plaintiff, the plaintiff to surrender her certificates representing the stock of defendant to enable defendant to make delivery to the purchasers; that on numerous dates after October 1st, defendant promised plaintiff that it would carry out the terms of the agreement; that about November 26, 1923, in partial performance of its agreement, defendant delivered to one or more purchasers of its stock 50 shares each of the preferred and common stock owned by plaintiff, and paid to plaintiff $10 a share, amounting to the sum of $500; that about March 5, 1924, and as a further performance of the agreement, defendant paid plaintiff $100, and about June 2, 1924, the sum of $50; that at many times since November 26, 1923, the plaintiff had offered to do all things necessary to enable defendant to carry out the terms of its contract, and demanded of defendant that it do so, but that since February 19, 1925, defendant has repudiated and refused to carry out its agreement.

For her second cause of action, the plaintiff alleged in substance: That defendant was indebted to plaintiff for dividends earned to the extent of 7 per cent per annum on $3,500; that on or about July 1, 1924, defendant's directors declared and authorized payment of a dividend of 3½ per cent of the par value of all its outstanding preferred stock, the par value of which was $10 per share; that by reason thereof, on July 1, 1924, plaintiff became entitled to the payment of a dividend on her preferred stock amounting to $122.50, but that defendant has refused to pay the same.

No motion of any kind was presented going to the sufficiency of the complaint, but defendant answered and alleged, among other things, that the contract set out in the complaint was made without consideration and without the authority of the corporation; that the contract, if

made, was contrary to public policy, and that it was ultra vires and void.

For a defense to the second cause of action defendant alleged, by way of counterclaim, that on March 5, and June 2, 1924, it advanced and loaned to plaintiff the sum of $150; that when the dividends were declared, it was agreed between plaintiff and defendant that the dividend should be credited on the loan until the full amount was repaid, and that there was a balance due defendant on the loan of $27.50. These matters were denied in the replication.

The answer admitted, and the evidence showed, that subsequent to October 1, defendant sold and delivered a large number of its preferred and common shares to various parties, and the number so sold exceeded 400; that it was sold for $10 or $12.50 per share.

As to the contract, the plaintiff was placed upon the stand to testify, and asked to tell what occurred at a meeting between herself and one Mulrooney, an agent of defendant, about the last of March or the first of April, 1923. This was objected to, and in response to the objection her counsel stated: "I believe I can shorten the matter up by saying if Judge Johnson will admit there was a consideration for this agreement I need not go into it; otherwise, I am bound to offer evidence to show the fraud and misrepresentation, and the setting aside of all idea of bringing an action on the ground of fraud was the consideration for entering into this agreement, but if you will admit there was a consideration for this agreement I will omit all of that."

Defendant refused to admit this. The court then said: "I don't believe you can show you have an action on fraud without pleading something more about it. Your pleading is too limited in that respect to introduce proof on it, in the opinion of the court. I can't see how you can draw a pleading of that kind, referring to one contract

and then, without referring in your pleading in any manner, except to just say for a consideration, try to bring in another fraud action. It doesn't appeal to the court as proper under those pleadings. Objection sustained."

No formal offer of evidence, on behalf of plaintiff as to the consideration, was made, but the remarks of the court plainly indicated that any offer of evidence to establish fraud and misrepresentation on the part of defendant's agents in the sale of the stock to plaintiff, and that the waiver of plaintiff's right to bring suit for the fraud was the consideration for the contract, would be rejected. Plaintiff was therefore not required to make an offer of proof, which she was advised by the court would be unavailing to her. In rejecting the evidence offered we think the court erred. Plaintiff could have been required to make a specific and definite offer of proof, or should have been permitted to proceed with her evidence until it was shown whether there was a sufficient consideration for the contract.

The offer made was sufficiently broad that had the evidence been received and conformed to the offer, we think it would have established prima facie, a consideration for the contract.

The court's theory, that plaintiff was confined solely to an action for the fraud and deceit which she claimed to have been practiced upon her in the sale of the stock, was clearly wrong.

As to the second cause of action, the evidence of Mr. Rice, president of the defendant company, was to the effect that the company had declared a dividend of 3½ per cent on its preferred stock, as alleged, but that they did not earn that dividend; that the company purported to give on its books credit to Mrs. Miller for a dividend of $122.50, which was never paid to her in cash; that the dividend which they credited on Mrs. Miller's notes was for the first half of 1924; that since that time there had been no dividend declared.

The plaintiff testified, in substance, that she received notice of the $122.50 due her as a dividend; that she received a letter from them saying that they had applied this money to the $150 they had given her for her stock and asked her to come in and settle for the balance; that she made a demand on them for the money; that Judge Johnson had told her to go back to the office and demand her interest; that she was entitled to it and that they had no right to take that out; that she objected to their applying the $122.50 on the $150, and told them that she was surprised, and that that was not the understanding at all; that she never consented that the dividend of $122.50 should be applied to liquidate the $150. Plaintiff testified that when Tennis gave her the $100, "He said they would take up the other $500 but they wanted it all in one lump and he could only let me have $100 at that time, if I needed that and it would help me out any he would let me have $100 on the stock and when I came in again he would pay me the rest. I offered him my certificate to put the $100 on, and he said, 'We don't want such a small amount, we can't just sell anybody just $100 worth.' " Then, when she saw Tennis again, she testified, "He gave me $50 in addition to the $100 and when I took it he asked me to sign something, he said, 'because we have got to keep track of it,' and he figured out how much that would leave to take out of the $500."

The trial court said her testimony was that "she put up her stock as security, a certificate for $500 worth of stock, or 50 shares." It does not so appear in the record of her evidence.

It is quite clear from plaintiff's testimony that she did not understand that the $150 was a loan to her, but that it was paid to her in furtherance, or part performance, of the contract sued upon. Upon this point there was sufficient conflict in the evidence to warrant the submission of the question to the jury.

It is contended that the dividend was not earned. The only evidence of this was the statement made by Mr. Rice, while being cross-examined by plaintiff under the statute as an adverse party, that the dividend had not been earned, which was a mere conclusion. No evidence was offered to show that the dividend had not been earned. Furthermore, the dividend had not only been declared, but defendant claimed it was paid by crediting the amount to plaintiff on the $150.

For the reasons pointed out the judgment should be reversed and a new trial granted. Reversed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE ALLEN, and MR. JUSTICE CAMPBELL concur.